## Moss vs. Ashbrooks et al.

In a bequest of several slaves to four minor children, to be equally divided between
them, the testator expressed his "will and desire that there should be a guardian
appointed to take charge of the property until the four children became of age:"
no division of the slaves can be legally made until the youngest child becomes of
age.

Where a wife has an undivided interest in slaves, the legal possession of which is in
another, and no division of them can be made until a future event, a delivery of
them to the husband is not such a reduction into possession during the life of the
wife as will vest the legal title in him, if the wife die before the happening of the
event.

Upon the death of a child having an interest in slaves, which came to it on the part
of the mother, the father succeeds to the child's rights.

*Appeal from the Circuit Court of Pike County in Chancery.*

Hon. ABNER A. STITH, Circuit Judge.

CUMMINS & GARLAND, for the appellant.

Where the husband survives the wife, her choses in action
survive to him whether or not they are reduced to possession,
as her next of kin; and his right to administer includes the
right to her choses in action. 6 *John. Ch. Rep.* 112; 5 *John.
Ch. R.* 207; *Gregory ad. vs. Marsh ad.* 1 *Rand.*

Possession of Ashbrooks, as guardian, was possession of Mrs.
Moss. *Coke Litt.* 479. A man can sue alone for a legacy
coming to his wife during coverture. 22 *Pick.* 484; 20 *Ib.* 141,
362. Where wife, before marriage, was joint tenant of slaves,
which went into possession of co-tenants, that was such pos-
session that the marital rights of the husband would attach.
1 *Hill S. C. R.* 397; see, also, 29 *Ala.* 233; 8 *Porter* 37.

There was a reduction into possession, of these negroes, by

the husband, sufficient in law, by the delivery of the slaves to him during the lifetime of the wife. *Rector vs. Danley*, 14 *Ark.* 304; *Id.* 351; *Parson's Mercantile Law* 41, 43, 50, 54; 1 *Williams on Exrs.* 612—citing *Hitchcock vs. Beardsly;* 1 *McQueen on Hus. & Wife* 49, 50; *Blount vs. Bestland,* 5 *Ves.* 515, note a.

WATKINS & GALLAGHER, for the appellees.

There never has been any division of the negroes: Ashbrooks had no authority to make any division; and the wife of the complainant, before her death, did not have a sole or exclusive right to either of the negroes. She had but an undivided interest in them, and was not entitled to them, or to have her interest allotted or set apart until the youngest child come of age. A delivery of any of the negroes, as her portion of the bequest, could not be made until a legal division under the will.

The husband is not entitled to personalty of his deceased wife not reduced into possession before her death. *Cox et al. vs. Morrow et al.,* 14 *Ark.* 614; *Carter vs. Cantrell,* 16 *Ark.* 160; *Reeve Dom. Rel.* 12; 9 *Porter,* 636; 2 *Call* 447; 1 *Hen. & Munf.* 224; 4 *Dana* 158; 5 *Mon.* 573; 2 *Brock.* 285; 1 *Hill Ch. R.* 51; 2 *ib.* 100.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Bill filed by John M. Moss, 11th April, 1849, against Moses Ashbrooks, William Ashbrooks, William Boone and wife Angeline, in Pike Circuit Court.

The bill alleges that Samuel Irvin, who died in Washington county, Missouri, by will, duly probated in the County Court of said county, bequeathed to the children of the said Moses Ashbrooks: Samuel, Angeline, William and Mary Jane, three slaves, *Caroline* and her two youngest children. Samuel died without heirs of his body; Mary Jane had also died. The other persons named in the will are defendants.

That the two youngest children of *Caroline* were males,

named *George* and *Jefferson;* and after the death of Irvin, and the probate of the will, she had four other children, females, named *Mary Ann, Catharine, Nancy* and *Malinda.*

That all the debts of Irvin were paid, and all of said slaves, *Caroline* and her six children, delivered by the executor of Irvin to the defendant, Moses Ashbrooks, for his children, who was, in January, 1846, appointed by the Probate Court of Pike county, guardian for his children, Samuel, William, Angeline, and Mary Jane, in pursuance of the directions of the will, and gave bond, etc., as such, and holds the slaves in that capacity, etc.

Angeline intermarried with the defendant, Boone, and William was still a minor.

About the 24th December, 1846, complainant intermarried with Mary Jane; and soon thereafter, said Moses Ashbrooks, representing himself as the guardian of complainant's wife, delivered to him two of the said slaves, George and Mary Ann, declaring that he had no further right to them, but that they belonged to complainant in right of his wife, by virtue of the marriage.

Complainant's wife died leaving an infant son, issue of the marriage, which died after its mother, without issue.

Immediately after the death of complainant's wife, said Moses Ashbrooks took the said slaves from him, by force, and holds and refuses to deliver them up.

That no division of the slaves had been made between the children of Moses Ashbrooks, under the will, until he assigned and delivered to complainant *George* and *Mary Ann*, in right of his wife, which were not more than his just share, etc.

Moses Ashbrooks had never filed any inventory of the estate of his wards, or made any settlement of his guardianship with Probate Court. He had not hired out the slaves as he should have done, but had kept them, and appropriated their labor to his own use. He is insolvent, and his security, as guardian, etc., worth nothing of consequence. He and defendant Boone were threatening to remove the slaves from the State, etc.

That the will contemplated a division of the slaves whenever any of the legatees were of full age. That complainant, by his marriage with said Mary Jane, acquired a legal undivided estate in all the slaves, and that the delivery to him of the slaves, *George* and *Mary Ann*, by Moses Ashbrooks vested in him a valid equitable interest in them, and entitled him to have them distributed to him in right of his wife, etc.; but that the said Moses Ashbrooks refuses to restore them to him, or account for their hire, etc.

*Prayer.*—That a receiver be appointed to hold the slaves until decree, etc., for an account of hire, etc., a division of the slaves, and their hire among the devisees, etc., under the will; and that George and Mary Ann be decreed to complainant as his portion, in right of his wife, he paying any excess of their value over his share, etc., and for general relief.

The defendants interposed a plea of former bill pending, etc., which was sustained, and the bill dismissed; complainant appealed to this Court and the decree was reversed. See *Moss vs. Ashbrooks et al.*, 7 *Eng.* 369.

On the remanding of the cause, Moses Ashbrooks answered the bill, and by agreement of parties, his answer was adopted by the other defendants.

The answer admits the execution of Irvin's will, and the bequest of the slaves to the children of respondent. That in 1843, in virtue of being guardian of devisees, he went to Missouri, received *Caroline* and her children from the administrator of Irvin, brought them to Hot Spring county, Arkansas, where he kept them until 1846, when he removed to Pike county, taking them with him, and still has them in possession. The expense of bringing them from Missouri, and the cost and trouble of raising the young negroes, exceeded the value of the hire, etc.

Admits that his son, *Samuel*, died without issue, William was still a minor, and Angeline had intermarried with defendant, Boone.

Complainant married Mary Jane in December, 1846, and

after the marriage respondent let him have the slaves, George and Mary Ann, to aid him in farming. But he positively denies that he delivered them to complainant as his portion of the slaves named in the will, in right of his wife. On the contrary, he avers that, seeing the destitute condition of complainant and wife, and anxious to help them all he could, he proposed to complainant to hire to him the two slaves, George and Mary Ann; and he not only acceded to the proposal, but it was distinctly understood, when respondent let him have the slaves, that he was to give bond and security, not only for their hire, but for their return on the 25th of the following Dec., (1847); and such were the terms on which respondent let complainant have the two slaves, and upon which he took them, and no other. The slaves were delivered to complainant upon his promise that the bond for their hire and return should be executed, etc., etc.

Respondent had made no division of the slaves among his children, and had no right or power to do so, had he felt disposed. Besides, *George* and *Mary Ann* were worth more than the share of complainant's wife in all the slaves, etc., etc.

He admits that complainant's wife died, leaving an infant son, which survived her and afterwards died, but avers that both the mother and son died before the 25th December, 1847, the time when complainant had agreed to return the two slaves and pay their hire, etc.

Denies that he took the slaves from complainant by force; and avers that after the death of his wife, he delivered them up to respondent, on demand, as bound to do by the contract of hiring.

There never had been any division of the slaves among respondent's children; nor did he ever say to complainant that George and Mary Ann were set apart to him, in right of his wife, etc., nor that respondent had no further claims to them, etc., etc.

He denies that complainant or his wife acquired any right to, or interest in George and Mary Ann, by virtue of having them in his possession under the contract of hiring, etc.; and

avers that complainant was responsible to him, as guardian, etc., for their hire. etc.

Denies that complainant has any interest in the slaves, and avers that William Ashbrooks and Angeline Boone are the surviving and proper legal heirs of complainant's wife and infant son, and that in consequence of the death of the son, the slaves passed to her surviving brother and sister, said William and Angeline, under the will, etc.

The answer also contains a demurrer to the bill, etc.

Upon the hearing the bill was dismissed, and the complainant appealed.

The depositions like the bill and answer, are, to some extent, in conflict. It is probable, however, from the statements of all the witnesses, that Moses Ashbrooks, after complainant married his daughter, Mary Jane, delivered to them the two negroes, *George* and *Mary Ann*, upon some indefinite contract for hire, with the understanding, perhaps, that they were about of the value of the share of complainant's wife in all of the slaves, under the will, and that when a final division should be made, after the younger devisees were of age, they should be allotted to her. We do not deem it material, however, to determine whether the depositions prove that Ashbrooks hired the slaves to Moss, or delivered them to him as the probable share of his wife, etc.

The language of the will is as follows: "I do hereby will and bequeath unto Moses Ashbrooks' four children, three negroes, *Caroline* and her two youngest children, to be equally divided between them. It is my will and desire that there should be a guardian appointed, to take charge of the *property* until the four children become of age, Samuel, Angeline, William and Mary Jane Ashbrooks."

Mary Jane (afterwards wife to complainant) took with the other devisees, an equal, absolute, undivided interest in all of the slaves, under the will. A division could be legally made by the decree of a Court of competent jurisdiction, or by agreement between the legatees after they were all of age.

Moses Ashbrooks became the guardian of his children, obtained possession of, and held the slaves as such, and in no other right.   He, as guardian, had no authority to make any division of the slaves among his wards.   At the time he delivered the two slaves, George and Mary Ann, to the complainant, William, one of the legatees, was still a minor, and not in a condition to consent to a division.   Complainant's wife had no title to these two slaves specifically, and the delivery of them to her or her husband by Ashbrooks, conferred upon her, nor upon him, any more right to them specifically than she had before—they, as well as the other slaves, remained the joint property of all the devisees under the will, and so continued until the death of complainant's wife.

Did the complainant, by virtue of his marriage, acquire title to his wife's undivided interest in all of the slaves?

We think, from the language of the will, it was clearly the intention of the donor, that the slaves should remain in charge of the guardian until all of the legatees became of age, then to be equally divided between them.   The language of the will is: " That there should be a guardian appointed *to take charge* of the *property until the four* children become of age."

The complainant married Mary Jane in December, 1846, and she died in December, 1847.   William, one of the legatees, was born, according to the answer of his father, 1st of August, 1829, and consequently was not of age until August, in the year 1850.   During the whole period of the marriage, Caroline and her six children were legally in possession of Ashbrooks, the guardian.   They were not divided, and could not have been legally divided among the legatees during the marriage.   It was not within the power of the husband, during the life of the wife, legally to reduce to possession, by suit or otherwise, his wife's undivided interest in the slaves.   We think this case falls within the principles settled by this Court in *Cox et al. vs. Morrow,* 14 *Ark.* 603, and *Carter et al. vs. Cantrell et al.,* 16 *ib.* 154, and is distinguishable from the cases relied on by the counsel for the appellant, where the wife, at the time of the

marriage, was the owner of slaves which were in the hands of the guardian, or bailee, and the Courts held that the possession of the bailee being, in law, the possession of the owner, the husband was entitled to the property, although he did not reduce it actually into possession, before the death of the wife. *Bibb vs. McKinley et al.,* 9 *Porter* 636.

On the death of Mrs. Moss, (appellant's wife,) she having an absolute interest in the slaves, her interest passed to her child, (subject to the rights of her creditors, if any,) and upon the death of the infant, its father, the appellant, succeeded to its rights, and is entitled to its share of the slaves; for though the right in the slaves came to the child on the part of the mother, it did not, upon the death of the child, go back to the heirs of the mother, as in case of real estate, but went to the father. *Kelly's heirs et al. vs. McGuire et al.,* 15 *Ark.* 555; *Hayward vs. Hayward,* 20 *Pick.* 519.

But the bill for partition of the slaves having been filed before William Ashbrooks, one of the legatees, was of age, was, as we have above indicated, premature, and though this objection is not made by the answer, it is necessarily presented by the demurrer to the bill, embraced in the answer, and reserved to the hearing.

The bill alleges that Ashbrooks and Boone were threatening to run off the slaves, that Ashbrooks, and his security on the bond, as guardian, were irresponsible, and that he was committing waste, etc., which would have been good grounds for the Chancellor to retain the bill and make the necessary orders and decree to secure the slaves and their hire, for the use of the complainant, and the other persons entitled to them under the will, etc., but no proof appears to have been made as to these allegations of the bill.

The decree of the Court below dismissing the bill must therefore be affirmed, without prejudice to the right of appellant to apply for a partition of the slaves, etc.

Absent, Mr. Justice RECTOR.